

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT KNOXVILLE

| | | |
|---|---|---|
| JOSE ALVAREZ,<br>　　　　Employee, | ) | Docket No.: 2015-03-0337 |
| v. | ) | |
| SURFACE IGNITER, LLC,<br>　　　　Employer, | ) | State File No.: 31161-2015 |
| And | ) | |
| NEW HAMPSHIRE INSURANCE<br>CO./ LIBERTY MUTUAL,<br>　　　　Carrier. | ) | Judge Lisa A. Lowe |

---

### COMPENSATION HEARING ORDER

---

This matter came before the undersigned Workers' Compensation Judge on April 25, 2017, for a Compensation Hearing. The central legal issues are: (1) whether Mr. Alvarez's left hand injuries arose primarily out of and in the course and scope of his employment, and (2) whether Surface Igniter established by a preponderance of the evidence its affirmative defense of willful violation of a safety rule.

For the reasons set forth below, this Court holds Mr. Alvarez established by a preponderance of the evidence that he sustained an injury primarily arising out of and in the course and scope of his employment with Surface Igniter. This Court further holds that Surface Igniter did not establish by a preponderance of the evidence that Mr. Alvarez willfully violated a safety rule. Accordingly, the Court holds that Mr. Alvarez is entitled to medical benefits and permanent partial disability benefits.

### History of Claim

Mr. Alvarez has worked as a mechanic for Surface Igniter for twenty years. On April 2, 2015, he assisted co-worker Mariano Hernandez organizing boxes and bins from Surface Igniter's move from Puerto Rico to Tennessee. Mr. Alvarez and Mr. Hernandez loaded a large box onto a forklift to place it on a rack. Mr. Hernandez operated the forklift and lifted

the box, but rather than going onto the rack, the box stuck. As a result, Mr. Hernandez turned off the forklift, and Mr. Alvarez climbed on the fender of the forklift to push the box onto the rack. As Mr. Alvarez moved his foot from the fender, Mr. Hernandez started the forklift. Mr. Alvarez lost his balance and reached his gloved left hand out to balance himself. His hand landed on the side of the forklift mast, and the chains on the mast pulled his hand into them. After removing the glove, Mr. Alvarez discovered his middle, ring, and little fingers bleeding. He went to supervisor Miguel Rodriquez's office to report the injury. Mr. Rodriguez transported Mr. Alvarez to Blount Memorial Hospital for treatment. Mr. Alvarez underwent surgery for partial amputations of his ring and little fingers. The incident happened on a Wednesday; Mr. Alvarez returned to work the following Monday and has not missed any additional time from work as a result of this injury.

As for the safety rule violation claim, eight days post-accident, Mr. Alvarez received a written warning notice from Mr. Rodriguez, who marked "Safety Violation" on the notice. Under "Company policy violated," Mr. Rodriguez noted, "Fork Lift Operation safety," and under "Specific behavior changes requested," Mr. Rodriguez noted, "To always observe and comply with the company health and safety rules."

Medical proof regarding the injury revealed the following. Mr. Alvarez obtained an independent medical evaluation (IME) with Dr. Robert Chironna, who also provided deposition testimony.[1] Dr. Chironna specializes in physical medicine and rehabilitation. He does not perform surgery, and hand injuries make up approximately 1-2% of his practice. Dr. Chironna testified within a reasonable degree of medical certainty that the work injury contributed more than fifty percent in causing Mr. Alvarez's need for medical treatment, considering all causes. He assigned Mr. Alvarez a permanent impairment rating of 15% to the body as a whole, which consisted of 5% for two finger amputations, 5% for hypersensitivity, and 6% for loss of range of motion (ROM) in the middle finger. Dr. Chironna stated the work injury contributed more than fifty percent to Mr. Alvarez's disablement. With regard to the following, Dr. Chironna testified the work injury contributed more than fifty percent to the need for treatment, the treatment was necessary, and the treatment charges were reasonable according to community standards:

---

[1] On pages 8, 10, and 17 of Dr. Chironna's deposition transcript, defense counsel objected to plaintiff's counsel's questions as leading. The Court sustains the objections as to the questions on pages 8 and 10 and overrules the objection as to the question on page 17. At the hearing, defense counsel also objected that on pages 11 and 12 Dr. Chironna read from a medical record (marked as Exhibit 2) when he acknowledged (on page 31) that he did not rely on it to form his IME opinion. Since defense counsel failed to make this objection during the proof deposition, the Court deems the objection waived.

2

| Deposition page | Deposition Exhibit | Provider | Amount |
|---|---|---|---|
| Page 21 | Exhibit 4 | Blount Memorial Hospital | $15,160.98 |
| Page 22 | Exhibit 5 | LeConte Radiology | $35.00 |
| Page 23 | Exhibit 6 | Maryville Anesthesiologists | $1,800.00 |
| Page 24 | Exhibit 7 | Blount Memorial Hospital-PT | $440.84 |
| Page 25 | Exhibit 8 | Blount Memorial Hospital-PT | $2,502.00 |
| Page 26 | Exhibit 9 | Hesse Creek Emerg. Phys. | $902.00 |
| Page 28 | Exhibit 10 | Blount Pathologists | $195.00 |
| Page 29 | Exhibit 11 | Blount Memorial Hospital-PT | $99.00 |
| Page 53 | Exhibit 13 | Ortho TN | $4,290.00. |

Surface Igniter obtained an IME from Dr. Timothy Renfree, who also provided deposition testimony. Dr. Renfree specializes in hand and upper extremity orthopedic surgery, which constitutes approximately 80% of his practice. He assigned Mr. Alvarez a permanent impairment of 8% to the body as whole, based on ROM, function, and amputation length. Dr. Renfree related Mr. Alvarez's impairment, including the loss of middle finger ROM, to the work injury. He disagreed with all of Dr. Chironna's ratings and stated, "I think [Chironna's] numbers were all over the place using the Fifth and Sixth [Edition of the AMA Guides]. It really made no sense. His levels were wrong . . . I don't understand Dr. Chironna's IME . . . he's not a hand surgeon."

At the hearing, Mr. Alvarez and Surface Igniter's safety trainer, Richard Wilson, watched a forklift safety training video. Although the video stated "Preview Only Not for Training Purposes," Mr. Alvarez, Mr. Wilson, and Mr. Rodriguez testified it was the same video content used for Surface Igniter's forklift training. Mr. Alvarez stated the training video did not address handling items stuck on the forklift and did not address climbing on a forklift. He testified that, at the time he got on the forklift fender, he did not think he would be injured and did not consider it dangerous because he did not anticipate Mr. Hernandez would turn on the forklift.

Mr. Wilson testified the forklift training consists of watching the video, taking a written exam including discussion of all incorrect answers, and a one-on-one evaluation with each driver. When asked which safety rules Mr. Alvarez violated, Mr. Wilson stated Mr. Alvarez was not wearing a seat belt, did not keep body parts in cabin, climbed on the forklift,

3

and touched the mast, which was a moving part. However, he acknowledged the rules about wearing a seat belt and remaining in the cabin are for forklift operators. He also acknowledged the portion of the video that addressed moving parts related to performing maintenance on the forklift. Mr. Wilson testified there have been no forklift violations this year. If he had witnessed a violation, he would have given a verbal warning on first occurrence, written warning on second occurrence, and reported any serious infractions to Mr. Rodriguez. Mr. Wilson stated there is enough in the forklift training to understand that one should not climb on the forklift but acknowledged the forklift training materials are geared for operators and do not state rules for anyone other than the forklift operator. He also stated that Mr. Alvarez could have used a ladder to remove the box instead of getting on the forklift.

Mr. Rodriguez testified that Surface Igniter cannot cover every potential incident with a rule; rather, he expects people to use basic common sense. He stated there is no difference between written rules and Surface Igniter's expectations. Mr. Rodriguez walks through the plant ten to fifteen times a day but does not "micromanage" his employees. When discussing how the accident occurred, he said, "in the heat of the moment sometimes people make bad decisions," and Mr. Alvarez just "made a bad judgment that day." Mr. Rodriguez testified Mr. Alvarez violated a safety rule when he used the forklift as a ladder. He agreed with Mr. Wilson that ladders were available on the premises. He acknowledged Surface Igniter does not have a rule against using the forklift as a ladder; it is just common sense. Mr. Rodriguez also acknowledged that Mr. Alvarez did not intentionally grab the mast. Finally, Mr. Rodriguez agreed that Surface Igniter did not present a written rule about not using a forklift as a ladder or a written rule about not climbing on the forklift.

Regarding the current condition of his left hand, Mr. Alvarez testified he is unable to bend his middle finger all the way down, his amputated fingers feel numb, his ring finger feels "confused" because of the flap, and the tip of his little finger is very sensitive. He also said it is difficult for him to grip small objects.

### Findings of Fact and Conclusions of Law

Mr. Alvarez has the burden of proof on all essential elements of his claim. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). At a compensation hearing, Mr. Alvarez must establish by a preponderance of the evidence that he is entitled to the requested benefits. *Willis v. All Staff,* TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence.").

*Causation*

To prove a compensable injury, Mr. Alvarez must show his alleged injuries arose primarily out of and in the course and scope of his employment. *Id.* at § 50-6-102(14). To do so, he must show an incident, or specific set of incidents, identifiable by time and place of occurrence, caused his injury. *Id.* at § 50-6-102(14)(A). Further, he must show, "to a reasonable degree of medical certainty that [the employment] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." *Id.* at § 50-6-102(14)(C).

Applying these principles to the facts of this case, the Court holds Mr. Alvarez satisfied his burden of proving, by a preponderance of the evidence, that his left hand injuries arose primarily out of and in the course and scope of his employment. Mr. Alvarez established a specific incident that occurred while performing his work duties on Surface Igniter's premises caused his injuries. Surface Igniter did not rebut Mr. Alvarez's testimony about how the injury occurred. In addition, Dr. Chironna concluded within a reasonable degree of medical certainty that Mr. Alvarez's work injury contributed more than fifty percent in causing Mr. Alvarez's need for medical treatment, considering all causes.

*Willful Violation of a Safety Rule*

Pertinent to this case, Tennessee Code Annotated section 50-6-110(a) excludes from coverage certain injuries arising from an employee's conduct. Among such injuries are those sustained as a result of an employee's "willful misconduct" and "willful failure or refusal to use a safety device" or violation of a safety rule. Tenn. Code Ann. § 50-6-110(a)(1), (4). When denying a claim on this basis, the burden of proof rests with the employer. Tenn. Code Ann. § 50-6-110(b).

The central legal issue in this case revolves around Mr. Alvarez's alleged willful misconduct. Tennessee Code Annotated section 50-6-110(a) (2016) provides in subsections (1) and (4) that no compensation shall be allowed for an injury or death due to the employee's "willful misconduct" or "willful failure or refusal to use a safety device." *Gonzales v. ABC Prof'l Tree Servs.,* 2014 TN Wrk. Comp. App. Bd. LEXIS 2, at *18 (Nov. 10, 2014). To meet its statutory burden of proof, an employer must prove the following four elements: "(1) the employee's actual, as opposed to constructive, notice of the rule; (2) the employee's understanding of the danger involved in violating the rule; (3) the employer's bona fide enforcement of the rule; and (4) the employee's lack of a valid excuse for violating the rule." *Id.* at *21.

In this case, Surface Igniter provided documentation and testimony about specific rules related to the operation of forklifts. There is no dispute that Mr. Hernandez was operating the forklift at the time of the injury, not Mr. Alvarez. Surface Igniter failed to

5

provide documentation about a specific rule prohibiting climbing on forklifts and/or using forklifts as a ladder. In fact, both Mr. Wilson and Mr. Rodriguez acknowledged those were not written rules. Instead, Mr. Rodriguez indicated that "it was just common sense."

Thus, the Court holds that Surface Igniter failed to establish by a preponderance of the evidence that it had a safety rule against climbing on a forklift and/or using a forklift as a ladder. The Court agrees with Mr. Rodriguez that it would be virtually impossible for an employer to create a specific safety rule to cover any and all instances. However, in order for an employer to escape liability for an otherwise compensable claim, that employer must have a specific rule in place and show that, despite an employee's knowledge of the rule, he or she violated the rule. Thus, the Court holds Surface Igniter failed to establish the first element of this defense.

Even though Surface Igniter failed to establish the first *Mitchell* element, the Court will briefly touch on the other elements. With regard to the danger involved, Mr. Alvarez testified he did not think his actions were dangerous because he did not think that Mr. Hernandez would start the forklift while he was still on it. Additionally, the Court finds it significant that Mr. Alvarez's injuries occurred when his left hand touched the mast, but he did not place his hand on the mast. He only reached for the mast to steady himself after being knocked off balance after Mr. Hernandez started the forklift. If Mr. Hernandez had not started the forklift, Mr. Alvarez would not have sustained his injuries. The Court holds Surface Igniter failed to establish the second element of this defense.

Mr. Wilson and Mr. Rodriguez testified there were no forklift safety violations prior to Mr. Alvarez's accident. Therefore, the testimony regarding Surface Igniter's bona fide enforcement of any forklift safety rules is equivocal. Finally, Mr. Alvarez testified that he climbed on the forklift because the box was stuck and needed to be moved to the rack. Although in hindsight he acknowledged that perhaps he could have used a ladder or stood on a box, the fact that the stuck box had to be moved to the shelf constituted a valid excuse at the time of the injury.

*Medical Benefits*

Having held Mr. Alvarez suffered an injury arising primarily out of and in the course and scope of his employment, the Court must address his request for medical benefits. Under the Workers' Compensation Law, "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A). Employers are also required to offer a panel of physicians "from which the injured employee shall select one (1) to be the treating physician." Tenn. Code Ann. § 50-6-204(a)(3)(A)(i).

Surface Igniter did not pay for any of Mr. Alvarez's medical treatment and did not

6

provide him a panel of physicians. Dr. Chironna testified Mr. Alvarez's treatment was reasonable and necessary as a result of the work injury. He further testified that the medical bills totaling $25,424.82, attached as exhibits to his deposition, were reasonable according to community standards. Accordingly, the Court holds Surface Igniter responsible for payment of these medical bills and for providing Mr. Alvarez a panel of physicians for ongoing future reasonable, necessary, and related medical care.

*Extent of disability*

For post-July 1, 2014 injuries, permanent partial disability is paid at sixty-six and two-thirds percent of the injured employee's average weekly wage for the period of compensation as determined by multiplying the employee's impairment rating by 450 weeks. Tenn. Code Ann. § 506-207(3)(A) (2016).

The experts in this matter disagree on Mr. Alvarez's impairment rating for purposes of performing the calculation above for permanent partial disability benefits. "In evaluating expert medical opinions, a trial judge may consider, among other things, the qualifications of the experts, the circumstances of their evaluation, the information available to them, and the evaluation of the importance of that information by other experts." *Venable v. Superior Essex, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 56, at *6 (Nov. 2, 2016). "A trial judge has the discretion to conclude that the opinion of one expert should be accepted over that of another expert." *Sanker v. Nacarato Trucks, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *11-12 (internal citation omitted).

Dr. Chironna assessed a fifteen percent permanent impairment to the body as a whole under the AMA Guides. (Ex. 1.) Dr. Renfree, using the same reference, assessed an eight percent permanent impairment. (Ex. 5.) Neither physician was an authorized treating physician; both merely performed IMEs. Therefore, neither impairment rating is entitled the statutory presumption of correctness.

Dr. Chironna's specialty is physical medicine and rehabilitation, and hand injuries only constitute approximately 1-2% of his practice. He based his ROM measurements on passive rather than active motion. Dr. Chironna acknowledged that Table 15-31 of the Sixth Edition of the Guides calculates impairment for finger ROM. However, he used the Fifth Edition of the Guides rather than the Sixth because he thinks the Fifth is more straightforward. Dr. Chironna also stated that the Sixth refers one back to the Fifth when measuring ROM but acknowledged that the reference to the Fifth is for measuring not calculating impairment. Dr. Chironna rated Mr. Alvarez's amputations at the PIP level but acknowledged Mr. Alvarez has at least part of the DIP level on his little finger.

In contrast, Dr. Renfree is an orthopedic surgeon specializing in hand and upper extremity injuries. He testified hand injuries constitute eighty percent of his practice. Dr.

7

Renfree explained that Dr. Chironna's amputation site ratings were incorrect because he used the wrong joint level. Dr. Renfree stated that Dr. Chironna's numbers "were all over the place using the Fifth and Sixth. It really made no sense." Dr. Renfree based his impairment rating on active ROM and testified the Guides use active ROM. Dr. Renfree testified "you cannot go back to the Fifth Edition for ratings unless the injury occurred before the Sixth Edition came out," which is not the case here. Finally, Dr. Renfree's report thoroughly detailed the basis for his impairment rating.

The evidence preponderates in favor of Dr. Renfree. As such, the Court gives greater weight to Dr. Renfree's impairment opinion and sets the impairment rating at 8% to the body as a whole. It follows that Mr. Alvarez's permanent partial disability is 450 weeks multiplied by 8%, a period of thirty-six weeks. At his stipulated compensation rate of $463.37, Mr. Alvarez is entitled to permanent partial disability benefits totaling $16,681.32.

After careful consideration of the evidence as a whole, this Court concludes that Mr. Alvarez established, by a preponderance of the evidence, that his injury arose primarily out of and in the course or scope of his employment with Surface Igniter, LLC.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Alvarez shall recover from Surface Igniter permanent partial disability benefits in the amount of $16,681.32 representing an 8% permanent partial disability to the body, or 36 weeks of compensation at the stipulated compensation rate of $463.37. These benefits, having accrued, are payable in a lump sum.

2. Surface Igniter shall pay for Mr. Alvarez's past medical expenses in the amount of $25,424.82. In addition, Mr. Alvarez shall receive lifetime future reasonable, necessary, and related medical benefits pursuant to statute. Surface Igniter shall provide Mr. Alvarez a panel of physicians for future medical treatment.

3. Costs of this cause of $150.00 are assessed against Surface Igniter, pursuant to Tenn. Comp. R. and Reg. 0800-02-21-.07 (2016), to be paid within five days of this order becoming final.

4. Surface Igniter shall prepare and file a statistical data form within ten business days of the date of this Order, pursuant to Tennessee Code Annotated section 50-6-244.

5. After a Compensation Hearing Order entered by a Workers' Compensation Judge becomes final in accordance with Tennessee Code Annotated section 50-6-239(c)(7), compliance with this Order must occur in accordance with Tennessee Code Annotated section 50-6-239(c)(9). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to

8

WCCompliance.Program@tn.gov no later than the fifth business day after this Order becomes final or all appeals are exhausted. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

**ENTERED this the 15th day of May 2017.**

**HON. LISA A. LOWE**
**Workers' Compensation Judge**

# APPENDIX

Exhibits:

1) Dr. Chironna's Deposition Transcript with Exhibits
2) Web address for safety video (marked for identification purposes only)
3) Employer's forklift safety training materials (Collective)
4) Employee Warning Notice
5) Dr. Renfree's Deposition Transcript with Exhibits

Technical record:

1) Petition for Benefit Determination
2) Dispute Certification Notice
3) Request for Initial Hearing
4) Initial Hearing Order
5) Notice Regarding Expert Witnesses
6) Employee's Proposed Expert Witness List
7) Notice of Deposition
8) Notice of Expert Witness Deposition
9) Employee's Tenn. R. Civ. P. 56.01 Motion for Summary Judgment
10) Employee's Brief in Support of Motion for Summary Judgment
11) Employee's Statement of Undisputed Material Facts
12) Order Granting Motion to Compel
13) Employer's Response to Motion for Summary Judgment
14) Employer's Statement of Additional Undisputed Material Facts
15) Employer's Response to Statement of Undisputed Material Facts
16) Employee's Response to Employer's Statement of Undisputed Material Facts
17) Employer's Motion to Exclude Dr. Chironna's impairment ratings·
18) Employee's Response to Motion to Exclude
19) Order Denying Employer's Motion to Exclude
20) Notice of Filing Deposition of Dr. Timothy Renfree
21) Order Denying Employee's Motion for Summary Judgment
22) Employee's Motion in Limine to Exclude Deposition Testimony & Reports of Dr. Timothy Renfree
23) Employer's Response to Motion in Limine to Exclude Deposition Testimony & Reports of Dr. Timothy Renfree
24) Order Denying Employee's Motion in Limine to Exclude Deposition Testimony & Reports of Dr. Timothy Renfree
25) Employee's Motion in Limine to Exclude New Safety Rule Violations
26) Employer's Response to Motion in Limine to Exclude New Safety Rule Violations
27) Employer's Reply to Employee's Response to Employer's Motions in Limine to Exclude

28) Order Denying Employee's Motion in Limine to Exclude New Safety Rule Violations
29) Employer's Motion to Exclude Evidence Regarding Sympathy
30) Employee's Response to Motion to Exclude Sympathy Evidence
31) Order Granting Motion to Exclude Evidence Regarding Sympathy
32) Employer's Motion to Exclude Evidence Regarding Mediation
33) Employee's Response to Motion to Exclude Mediation
34) Order Granting Motion to Exclude Mediation
35) Employer's Motion for Clarification
36) Employee's Response to Motion for Clarification
37) Order Denying Motion for Clarification
38) Employer's Motion to Exclude the Middle Finger
39) Employee's Response to Motion to Exclude Middle Finger
40) Employer's Reply to Employee's Response to Employer's Motion to Exclude the Middle Finger
41) Order Denying Motion to Exclude Middle Finger
42) Employer's Renewed Motion to Exclude Dr. Chironna's Impairment Rating and Alternative Motion to compel Second IME and to Continue Trail
43) Employee's Response to Renewed Motion to Exclude Dr. Chironna's Impairment rating
44) Order Denying Renewed Motion to Exclude Dr. Chironna's Impairment rating
45) Employer's Motion to Quash Subpoena of Miguel Rodriguez
46) Employee's Response to Motion to Quash Subpoena of Miguel Rodriguez
47) Employer's Reply to Employee's Response to Employer's Motion for Clarification and Employer's Motion to Quash
48) Order Denying Motion to Quash Subpoena of Miguel Rodriguez
49) Employee's Motion for Rule 11 Sanctions
50) Employer's Response to Motion for Rule 11 Sanctions
51) Employee's Proposed Witness List
52) Employee's Proposed Exhibit List
53) Employee's Pre-Compensation Hearing Statement
54) Employer's Compensation Hearing Brief
55) Employer's Witness and Exhibit List
56) Petition for Benefits
57) Dispute Certification Notice

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 15th day of May, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Timothy Roberto, Employee's Counsel | | | X | troberto@brownandroberto.com |
| Chris W. Sherman, Employer's Attorney | | | X | cwsherman@mijs.com |

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

12